IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| THOMAS WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 106-011 |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Thomas Williams ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by counsel, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

## I. BACKGROUND

Based upon claims that he had been disabled since July 27, 1993, Plaintiff filed for SSI benefits on March 12, 2003. Tr. ("R."), pp. 48-50. The Social Security Administration denied his original claim and his request for reconsideration. R. 31-34, 38-40. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). R. 41. The ALJ conducted a hearing on September 13, 2004, in which Plaintiff, who was accompanied by an attorney, testified on his own behalf and in which a vocational expert ("VE") gave testimony. R. 249-90. On March 11, 2005, the ALJ issued an unfavorable decision. R. 14-22.

Applying the five-step sequential evaluation process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's degenerative disc disease, hearing deficit in his left ear, heart problems, seizures, alcoholism in remission, and cognitive limitations are considered "severe" based on the requirements in the Regulations (20 C.F.R. § 416.920(c)).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant has the residual functional capacity ("RFC") to perform medium work,[1] with limited reading and writing ability, occasional climbing and stooping, and no exposure to hazardous work areas such

---

[1] 20 C.F.R. § 416.967(c) provides: "(c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."

2

>
> as machinery or unprotected heights. The claimant is unable to perform any of his past relevant work (20 C.F.R. § 416.965).
>
> 5. Although the claimant's exertional limitations do not allow him to perform the full range of medium work, based upon his age, education, work experience, testimony of the VE, and using Medical-Vocational Rule 201.29 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a hand packager (medium), kitchen helper, sorter, and hand packager (light). The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. § 416.920(g)).

R. 21-22.

When the Appeals Council ("AC") declined Plaintiff's request for review on November 25, 2005, the ALJ's decision became the Commissioner's final decision. R. 4-6. Having exhausted his administrative remedies, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal of the adverse decision. Plaintiff alleges that the ALJ erred by rejecting Dr. Douglas Payne's I.Q. test scores and, as a result, improperly determined that Plaintiff failed to meet the requirements of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05(C) ("Listing 12.05(C)"), which pertains to disabling mental retardation. (Doc. no. 8, p. 1). The Court resolves the matter as follows.

## II. THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards.

Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails

4

either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

Plaintiff contends that the ALJ erred by rejecting the I.Q. test scores submitted by Dr. Payne and, as a result, improperly determined that Plaintiff's impairments did not meet Listing 12.05(C). (Doc. no. 8, pp. 3-4). The Commissioner contends that substantial evidence supports the ALJ's conclusion that Plaintiff did not meet Listing 12.05(C) because no evidence supports a finding that the onset of the mental impairment began before age twenty-two (22), and other evidence in the record is inconsistent with disabling metal retardation. Therefore, the Commissioner asserts that the I.Q. test scores were properly rejected.

According to 20 C.F.R. § 416.920(d), an impairment that "meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment(s)" will result in a finding of disability "without considering . . . age, education, and work experience." Plaintiff bears the burden of showing that his condition meets or equals the Listing. Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (*per curiam*). In order to show that his impairment meets a Listing, Plaintiff needs to meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Listing 12.05 addresses mental retardation defined therein as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the

5

developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are met." 20 C.F.R. Part 404, Subpart P, App. 1 § 12.05. As evidence of his mental retardation, Plaintiff cites the May 5, 2005 WAIS-III intelligence test administered by Dr. Payne which revealed a Verbal I.Q. score of 63, a Performance I.Q. score of 69, and a Full Scale I.Q. score of 63. R. 100.

"To be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). A plaintiff satisfies Listing 12.05(C) when he "[1] presents a valid I.Q. score of 60 to 70 inclusive, and [2] evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities."[2] Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). The Eleventh Circuit, however, has recognized "that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Id. Even so, an ALJ must "take into account the intelligence test and the medical report" in evaluating a mental retardation claim. Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986).

---

[2] The ALJ stated that Plaintiff's degenerative disc disease, hearing deficit in his left ear, heart problems, seizures, alcoholism in remission, and cognitive limitations are considered "severe" based on the requirements in the Regulations citing 20 C.F.R. § 416.920(c). R. 21. Thus, based upon the ALJ opinion, Plaintiff possesses "additional mental or physical impairments" sufficient to satisfy the second prong of Listing 12.05(C).

6

In this case, Plaintiff relies on I.Q. test scores from a psychological evaluation by Dr. Payne, which occurred when Plaintiff was fifty (50) years old, to support his claim of mental retardation. R. 97-101. The Commissioner contends that the absence of any evidence relating to Plaintiff's cognitive impairments before age 22 is fatal to Plaintiff's claim for eligibility under Listing 12.05(C). However, in the Eleventh Circuit, it is presumed that a person's I.Q. remains fairly constant throughout their lifetime, and a valid I.Q. test creates a rebuttable presumption that the condition manifested itself before age 22. Hodges v. Barnhart, 276 F.3d 1265, 1268-69 (11th Cir. 2001). In this case there is no evidence that Plaintiff suddenly developed a cognitive impairment after age 22. Therefore, the Court must determine whether substantial evidence supports the ALJ's rejection of the I.Q. test results.[3]

The ALJ assumed that Dr. Payne considered the I.Q. test results valid but determined that other evidence in the record was inconsistent with a determination that Listing 12.05(C) was satisfied.[4] As stated above, while the ALJ must take into account the results of an I.Q.

---

[3] As the Commissioner notes, it appears that evidence relating to Plaintiff's cognitive function prior to age 22 may exist in his school records but no such evidence was ever presented. (Doc. no. 9, p. 13). Plaintiff reported receiving special education services through the fifth grade, had access to these school records, but did not present the results of any educational placement tests for which Plaintiff qualified for placement in special education. The Court also notes that Plaintiff reported to Dr. Payne that he had received special education services through the fifth grade, and had repeated the third and fourth grade, although, as the ALJ noted, this contrasts with Department of Corrections records which do not indicate that Plaintiff had a history of special education. R. 17, 97. However, as stated above, the presentation of a valid I.Q. test creates a rebuttable presumption in favor of Plaintiff with regard to this issue, and the burden shifts to the Commissioner to present contrary evidence.

[4] As Plaintiff correctly points out, the ALJ mistakenly stated that Dr. Payne "did not explicitly comment of the validity of the test scores" when, in fact, Dr. Payne reported that Plaintiff's "test results would be considered valid" and "were consistent with his prior educational and vocational background." R. 16, 100. Nevertheless, despite the ALJ's

7

test, such results need not be conclusive of mental retardation where the scores are inconsistent with other evidence in the record. Lowery, 979 F.2d at 837. In this case, the ALJ articulated "several reasons for questioning the validity of the test scores and the mental retardation diagnosis." R. 16.

To begin, the ALJ properly discredited Plaintiff's subjective testimony concerning his daily activities, ability to perform work, and his level of cognitive function. With regard to Plaintiff's activities, certain prison records stated that Plaintiff was cleared for "any work detail," but Plaintiff denied that he was eligible for, or that he ever participated in, prison work detail. R. 17, 181, 270. In addition, hospital records indicated that Plaintiff injured his eye while working in the yard with a "weedwhacker" in August 2004; however, at the hearing he stated that he was merely standing in the yard and that his brother-in-law was operating the machine when the accident occurred.[5] R. 17, 229, 277-78. The ALJ further noted Plaintiff's reported work history as a full-time molder[6] for a steel company from 1970

---

misstatement, the ALJ assumed "that Dr. Payne found the scores to be valid since he did not indicate otherwise." R. 16. Because the ALJ assumed that Dr. Payne considered the I.Q. scores valid, this mistake appears to have had no bearing on the ALJ's analysis.

[5]In either case, Plaintiff's statements seem inconsistent. At the hearing Plaintiff testified that his brother-in-law was disabled. R. 267. Thus, it appears that either Plaintiff or an individual who was allegedly disabled was operating the "weedwhacker" on the date in question.

[6]The ALJ's opinion states that the VE classified this position as unskilled. R. 17, 281-82. Although the VE did describe Plaintiff's position as a presser at a dry cleaning business as unskilled, it does not appear that the VE commented on Plaintiff's molder position at the hearing. R. 58, 281-85. The VE did classify Plaintiff's description of his work as a "grinder" at the Augusta Foundry from 1992 to 1993 as "skilled" but opined that, although hesitant to assume a role normally reserved for a psychologist, this position does not necessarily indicate high level cognitive function. R. 17, 72, 281-82.

8

to 1988 but observed that all of his alleged earnings were not reported to Social Security during this time period. R. 17, 59. Moreover, the ALJ noted Plaintiff's employment as a presser and grinder and his report to the consultative examiner that he had been enrolled in special education during his school years when, in contrast, Department of Corrections records did not indicate that he had a history in special education. R. 15, 17. The ALJ also noted Plaintiff's history of incarceration and the fact that he deceived both the police and the Georgia Department of Corrections by providing a different name, date of birth, and social security number at the time of his arrest and on subsequent occasions. R. 16, 268-69.

The ALJ also noted Plaintiff's statement to the consultative examiner that he had worked "all his life" as an auto mechanic. R. 17, 120. The ALJ noted that Plaintiff was either performing the work he alleged, which would certainly not be classified as unskilled, or he was being untruthful. R. 17; (see doc. no. 10, Ex. B, Dictionary of Occupational Titles 620.261-010). Although Plaintiff asserts that the ALJ erred in discrediting the validity of the I.Q. test results by relying upon "hearsay" with regard to the consultative examiner's report because no other evidence of such a position appears within the record (doc. no. 7, p. 5), as set forth above, this was not the only evidence the ALJ relied upon in discrediting the I.Q. test results. Moreover, it appears the ALJ was reluctant to give this "all his life" statement any type of controlling weight because this position was not sufficiently developed within the record. Even so, the ALJ was not required to totally ignore the consultative examiner's report, even though it may have contained hearsay, and the observation was not improper.

In sum, although the I.Q. scores were considered valid by Dr. Payne and met Listing 12.05(C), the ALJ determined that those scores were inconsistent with other evidence in the

record dealing with Plaintiff's cognitive abilities. The ALJ noted the reasons why she discounted Plaintiff's subjective testimony about his abilities mentioning the inconsistencies in the record and determining that Plaintiff was able to perform daily activities such as yard work, in addition to his past work as a molder, presser, and grinder, which the ALJ's opinion lists as unskilled. R. 15, 17, 281. The ALJ also noted Dr. Cal VanderPlate's consultative report regarding Plaintiff's mental capacity. R. 18, 102-19. Dr. VanderPlate concluded, based upon the evidence in the record, that Plaintiff's work history and adaptive skills were inconsistent with a finding of mental retardation and that his I.Q. scores fell solidly within the range of borderline intellectual functioning. R. 104. Based upon a review of the whole record, the ALJ observed evidence which conflicted with the I.Q. test scores and determined that the evidence did not support "defects in adaptive behavior as required by 12.05[(C)]." R. 18.

The ALJ articulated sufficient justifications for rejecting the I.Q. test scores. See Outlaw v. Barnhart, 197 Fed. Appx. 825, 827 (11th Cir. 2006) (determining that the plaintiff's work history in semi-skilled positions justified a finding that his I.Q. scores, which fell within Listing 12.05(C), were not consistent with his daily activities when presented with a conflicting I.Q. score of 70 and contrary opinions of consultative examiners). The ALJ noted numerous inconsistences in the record to discredit Plaintiff's credibility, his work history as a presser, molder, and grinder, his ability to perform daily chores such as yard work, and, as such, credited Dr. VanderPlate's determination that Plaintiff's was not mentally retarded based upon his work history and adaptive skills. Accordingly, despite the

I.Q. test results submitted by Dr. Payne, substantial evidence supported the ALJ's determination that Plaintiff did not meet the requirements of Listing 12.05(C).

### IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 22ND day of January, 2007, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE